## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### Holding a Criminal Term

### Grand Jury Sworn in on January 8, 2021

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | MAGISTRATE NO. 21-mj-47 |
| | : | |
| DOMINIC PEZZOLA, | : | MAGISTRATE NO. 21-mj-32 |
| | : | |
| Also Known As "Spaz," | : | VIOLATIONS: |
| | : | |
| Also Known As "Spazzo," | : | 18 U.S.C. § 371 |
| | : | (Conspiracy) |
| Also Known As "Spazzolini," and | : | |
| | : | 18 U.S.C. § 111(a)(1) |
| | : | (Assaulting, Resisting, or Impeding |
| WILLIAM PEPE, | : | Certain Officers) |
| | : | |
| Defendants. | : | 18 U.S.C. § 231(a)(3) |
| | : | (Civil Disorder) |
| | : | |
| | : | 18 U.S.C. § 1361 |
| | : | (Government Property or Contracts) |
| | : | |
| | : | 18 U.S.C. § 1512(c)(2) |
| | : | (Obstruction of an Official Proceeding) |
| | : | |
| | : | 18 U.S.C. § 2112 |
| | : | (Robbery of Personal Property of the |
| | : | United States) |
| | : | |
| | : | 18 U.S.C. § 1752(a)(1), (2), & (4) |
| | : | (Restricted Building or Grounds) |
| | : | |
| | : | 18 U.S.C. § 2 |
| | : | (Aiding and Abetting) |

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE

At times relevant to this indictment:

### Background about January 6, 2021

1.     The United States Capitol is secured 24 hours a day by United States Capitol Police

("Capitol Police").  The Capitol Police maintain permanent and temporary barriers to restrict access

to the Capitol exterior, and only authorized individuals with appropriate identification are allowed inside the Capitol building.

      2.      The entire Capitol complex—including the Capitol building, the Capitol Visitor Center, and Capitol grounds to include the entire exterior plaza—was barricaded and off limits to the public on January 6, 2021.

      3.      On January 6, 2021, at approximately 1:00 p.m., the Joint Session convened in the Capitol building to certify the Electoral College vote.  Vice President Michael R. Pence, in his constitutional duty as President of the Senate, presided over the Joint Session.

      4.      A large crowd began to gather outside the Capitol perimeter as the Joint Session got underway.  Crowd members eventually forced their way through, up, and over Capitol Police barricades and advanced to the building's exterior façade.  Capitol Police officers attempted to maintain order and stop the crowd from entering the Capitol building, to which the doors and windows were locked or otherwise secured.  Nonetheless, shortly after 2:00 p.m., crowd members forced entry into the Capitol building by breaking windows, ramming open doors, and assaulting Capitol Police officers.  Other crowd members encouraged and otherwise assisted the forced entry. The crowd was not lawfully authorized to enter or remain inside the Capitol, and no crowd member submitted to security screenings or weapons checks by Capitol Police or other security officials.

      5.      Shortly thereafter, at approximately 2:20 p.m., members of the House and Senate (including Vice President Pence)—who had withdrawn to separate chambers to resolve an objection—were evacuated from their respective chambers.  The Joint Session and the entire official proceeding of the Congress was halted while Capitol Police and other law enforcement officers worked to restore order and clear the Capitol of the unlawful occupants.

      6.      Later that night, law enforcement regained control of the Capitol.  At approximately 8:00 p.m., the Joint Session reconvened, presided over by Vice President Pence, who had remained within the Capitol building throughout these events.

      7.      In the course of these events, approximately 81 members of the Capitol Police and 58 members of the Metropolitan Police Department were assaulted.  Additionally, one subject was shot

and killed while attempting to enter the House chamber through broken windows; many media members were assaulted and had cameras and other news gathering equipment destroyed; and the Capitol suffered millions of dollars in damage—including broken windows and doors, graffiti, and residue of various pepper sprays, tear gas, and fire extinguishers deployed both by crowd members who stormed the Capitol and by Capitol Police officers trying to restore order.

Background about the Proud Boys

8.      Proud Boys is a nationalist organization with multiple U.S. chapters and potential activity in other Western countries. The group describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." Proud Boys members routinely attend rallies, protests, and other First Amendment-protected events, where certain of its members sometimes engage in acts of violence against individuals whom they perceive as threats to their values. The group has an initiation process for new members, which includes the taking of an "oath." Proud Boys members often wear the colors yellow and black, as well as other apparel adorned with Proud Boys-related logos and emblems.

The Defendants

9.      Dominic Pezzola, also known as "Spaz," also known as "Spazzo," also known as "Spazzolini" ("PEZZOLA") was a U.S. citizen residing in Rochester, New York, and a member of the Proud Boys. At the top of at least one of Pezzola's social-media accounts pages, his biography read, "Marine vet / boxer / patriot/ Proud Boy 2nd°." Pezzola kept at his home a tactical vest with the Proud Boys logo on it.

10.      William Pepe ("PEPE") was a U.S. citizen residing in Beacon, New York. He was a member of the Proud Boys and kept various articles of Proud Boy-related paraphernalia in his home in Beacon, including a tactical vest with the Proud Boys logo on it.

The Conspiracy

11.      From at least as early as January 6, 2021, and continuing through January 6, 2021, in the District of Columbia and elsewhere, the defendants, PEZZOLA and PEPE, did knowingly combine, conspire, confederate, and agree, with each other and others known and unknown to the

Grand Jury, to commit an offense against the United States, namely, to obstruct, influence, impede, and interfere with law enforcement officers engaged in official duties incident to and during the commission of a civil disorder and, in so doing, to obstruct, delay, and adversely affect the performance of a federally protected function, in violation of Title 18, United States Code, Section 231(a)(3).

### Object of the Conspiracy

12.     The object of the conspiracy was to obstruct, influence, impede, and interfere with law enforcement officers engaged in their official duties in protecting the U.S. Capitol and its grounds during the demonstrations planned for January 6, 2021.

### Manner and Means

13.     The conspiracy was carried out through the following manner and means, among others; PEZZOLA, PEPE, and others known and unknown to the grand jury, took actions to evade and render ineffective the protective equipment deployed by Capitol Police in active riot control measures, including actions to remove temporary metal barricades erected by the Capitol Police for the purpose of controlling access to the Capitol Grounds, and the stealing and purloining of property belonging to Capitol Police.

### Overt Acts

14.     In the support of the conspiracy, and in furtherance of the object thereof, the following individuals undertook the following overt acts, among others:

15.     On or about January 5 - 6, 2021, PEZZOLA, PEPE, and other individuals affiliated with the Proud Boys, whose identities are known and unknown to the Grand Jury, traveled in interstate commerce to Washington, D.C. from different locations and arranged to meet in Washington, D.C.

16.     On or about January 6, 2021:

    a.  PEZZOLA, PEPE, and other individuals affiliated with the Proud Boys, whose identities are known and unknown to the Grand Jury, assembled on the National Mall

and other locations in Washington, D.C.

b.  Individuals known and unknown to the Grand Jury, including PEZZOLA, PEPE, and other members of the Proud Boys, traveled to and gathered near the northwest pedestrian entrance to the Capitol grounds on First Street, N.W. (the "Pedestrian Entrance"), where Capitol Police had set up metal barricades for the purpose of controlling access to the Capitol grounds.

c.  An organizer of the Proud Boys and other Proud Boys led the group assembled near the Pedestrian Entrance in a series of chants, including "F*** Antifa" and "We love Trump."

d.  Members of the group described in Paragraph 16.b, who are unknown to the Grand Jury, toppled over temporary metal barriers set up by the Capitol Police to bar access to the Capitol grounds.

e.  On or about January 6, 2021, members of the group described Paragraph 16.b, who are unknown to the Grand Jury, assaulted members of the Capitol Police who stood behind the temporary metal barricades near the Pedestrian Entrance and who were trying to control access to the Capitol grounds.

f.  Members of the group described in Paragraph 16.b, who are known and unknown to the grand jury, walked along a pathway that ran from the northwest entrance to the Capitol grounds, towards another police barricade near the entrance to a plaza on the west side of the Capitol building. PEZZOLA and PEPE were among those individuals leading the group, which included many Proud Boys, and PEZZOLA and PEPE walked in close proximity to one another as they approached the Capitol building and Capitol Police officers who were assigned to guard it.

g.  Upon reaching police barricades that had been erected at the entrance to the west plaza of the U.S. Capitol, interfered with Capitol Police control of the west plaza of the Capitol by removing a police barricade so that other Proud Boys and persons could

        infiltrate that plaza, thus depriving Capitol Police officers of a means of controlling

        access to the Capitol and certain areas within the Capitol grounds.

    h.   Shortly after the events described above, PEZZOLA confronted a Capitol Police

        officer attempting to control the crowd and ripped away the officer's riot shield, while

        the officer physically engaging with individuals who had gathered unlawfully in the

        west plaza of the Capitol.

(**Conspiracy**, in violation of Title 18, United States Code, Sections 371 and 231(a)(3)).

## COUNT TWO

17.     Paragraphs one through ten of this Indictment are re-alleged and incorporated as if fully set forth herein.

18.     On or about January 6, 2021, within the District of Columbia, PEPE, aided and abetted by PEZZOLA and others known and unknown to the Grand Jury, hindered the ability of the Capitol Police to control access to the west Plaza of the Capitol by intentionally moving temporary barricades that had been erected by the Capitol Police near the entrance to the west plaza of the Capitol.

19.     On or about January 6, 2021, within the District of Columbia, PEZZOLA and PEPE committed and attempted to commit an act to obstruct, impede, and interfere with law enforcement officers engaged in the performance of their official duties, incident to and during the commission of a civil disorder, and the civil disorder obstructed, delayed, and adversely affected the conduct and performance of a federally protected function.

(**Civil Disorder**, in violation of Title 18, United States Code, Sections 231(a)(3) and 2)

## COUNT THREE

20.     Paragraphs one through ten of this Indictment are re-alleged and incorporated as if fully set forth herein.

21.     On or about January 6, 2021, within the District of Columbia, PEZZOLA stole a riot shield that was property of the United States, while that riot shield was being used by a Capitol Police

officer in active riot control, while physically engaging with individuals who had gathered unlawfully in the west plaza of the Capitol.

22.     On or about January 6, 2021, within the District of Columbia, PEZZOLA committed and attempted to commit an act to obstruct, impede, and interfere with law enforcement officers engaged in the performance of their official duties incident to and during the commission of a civil disorder, and the civil disorder obstructed, delayed, and adversely affected the conduct and performance of a federally protected function.

(**Civil Disorder**, in violation of Title 18, United States Code, Section 231(a)(3))

## COUNT FOUR

23.     Paragraphs one through ten and twenty-one of this Indictment are re-alleged and incorporated as if fully set forth herein.

24.     On or about the January 6, 2021, in the District of Columbia, PEZZOLA, by force and violence and by putting in fear did steal and take from the person and possession of a Capitol Police officer, personal property of the United States consisting of a riot shield.

(**Robbery of Personal Property of the United States**, in violation of Title 18, United States Code, Section 2112)

## COUNT FIVE

25.     Paragraphs one through ten and twenty-one of this Indictment are re-alleged and incorporated as if fully set forth herein.

26.     On or about January 6, 2021, within the District of Columbia, PEZZOLA, with intent to commit a felony, that is, robbery as alleged in Count Four of this Indictment, did forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), and did make physical contact with that officer and employee, while such person was engaged in and on account of the performance of official duties.

(**Assaulting, Resisting, or Impeding Certain Officers**, in violation of Title 18, United States

Code, Section 111(a)(1))

## COUNT SIX

27.     Paragraphs one through ten of this Indictment are re-alleged and incorporated as if fully set forth herein.

28.     On or about January 6, 2021, PEZZOLA moved from the west plaza to the west balcony of the Capitol, taking with him a riot shield that was property of the Capitol Police.

29.     On or about January 6, 2021, PEZZOLA used a riot shield that was property of the Capitol Police to break a window that led to the interior of the Capitol, allowing multiple rioters to enter the Capitol.

30.     On or about January 6, 2021, within the District of Columbia, PEZZOLA did willfully injure and commit depredation against property of the United States, and of any department and agency thereof, and any property which has been and is being manufactured and constructed for the United States, and any department or agency thereof, that is a window to the U.S. Capitol Building, causing damage in an amount more than $1000.

(**Destruction of Government Property**, in violation of Title 18, United States Code, Section 1361)

## COUNT SEVEN

31.     Paragraphs one through ten of this Indictment are re-alleged and incorporated as if fully set forth herein.

32.     On or about January 6, 2021, within the District of Columbia, PEZZOLA attempted to and did corruptly obstruct, influence, and impede an official proceeding, that is a proceeding before Congress, by committing an act of civil disorder, and breaking a window to the U.S. Capitol building, and unlawfully entering and remaining in a restricted building without lawful authority, and engaging in disorderly and disruptive conduct on federal property.

(**Obstruction of an Official Proceeding**, in violation of Title 18, United States Code, Section 1512(c)(2))

## COUNT EIGHT

33.     Paragraphs one through ten of this Indictment are re-alleged and incorporated as if fully set forth herein.

34.     On or about January 6, 2021, in the District of Columbia, PEZZOLA and PEPE did unlawfully and knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-elect were temporarily visiting, without lawful authority to do so.

(**Restricted Buildings or Grounds**, in violation of Title 18, United States Code, Section 1752(a)(1))

## COUNT NINE

35.     Paragraphs one through ten of this Indictment are re-alleged and incorporated as if fully set forth herein.

36.     On or about January 6, 2021, in the District of Columbia, PEZZOLA and PEPE, did knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-elect were temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions.

(**Disorderly and Disruptive Conduct in a Restricted Buildings or Grounds**, in violation of Title 18, United States Code, Section 1752(a)(2))

## COUNT TEN

37.     Paragraphs one through ten of this Indictment are re-alleged and incorporated as if fully set forth herein.

38.     On or about January 6, 2021, in the District of Columbia, PEZZOLA did knowingly engage in any act of physical violence against any property in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its

grounds, where the Vice President and Vice President-elect were temporarily visiting.

(**Engaging in Physical Violence in a Restricted Buildings or Grounds**, in violation of Title 18, United States Code, Section 1752(a)(4))

## COUNT ELEVEN

39.    Paragraphs one through ten of this Indictment are re-alleged and incorporated as if fully set forth herein.

40.    On or about January 6, 2021, PEZZOLA, aiding and abetting others known and unknown to the Grand Jury, and aided and abetted by them, did confront Capitol Police Officer Eugene Goodman inside the U.S. Capitol while Officer Goodman was engaged in the performance of his official duties.

41.    On or about January 6, 2021, within the District of Columbia, PEZZOLA committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, that is Eugene Goodman, engaged in the performance of his official duties incident to and during the commission of a civil disorder, and the civil disorder obstructed, delayed, and adversely affected the conduct and performance of federally protected function.

(**Civil Disorder**, in violation of Title 18, United States Code, Sections 231(a)(3) and 2)

A TRUE BILL:

FOREPERSON

*Michael R. Sherwin /SM/*

United States Attorney in
and for the District of Columbia