UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

    v.                        Crim No.:  1:21-cr-52 (TJK)

Dominic Pezzola

        Defendant.

**DEFENDANT'S MOTION FOR MODIFICATION OF
OF BOND TO PLACE THE DEFFENDANT
ON CONDITIONAL RELEASE PENDING TRIAL**

    Defendant by and through undersigned counsel, respectfully moves this Court, pursuant to the Bail Reform Act of 1984, 18 U.S.C. 3141 et seq., to release the defendant on personal release. Alternatively, if the Court is not amenable to release defendant on personal recognizance, defendant moves this court to release defendant into the third-party custody of his wife, and commit him to the supervision of a High Intensity Supervision Program (HISP) with GPS monitoring by local Pretrial Services1. The defendant requests that he be placed on house arrest with reasonable curfew privileges that allow him to leave the house for work and activities related to this case. In support of this request the defense states the

---

1 There is a US District Court in Rochester NY, the Western District of New York.  They have a Pretrial Services unit that could provide supervision and has the ability to install GPS monitoring devices and supervise in a High Intensity Supervision Program (HISP).

following:

## FACTS

Defendant is before the count charged with multiple counts arising out of his alleged participation in the activities that occurred at the US Congress on January 6, 2021. The prosecution's indictment and detention memorandum allege defendant travelled from Rochester, NY, to participate in the activities and that while present the defendant broke a window thereby, facilitating others entry into the Capitol. In assessing dangerousness the prosecution's memorandum must be examined for what it does not allege. There is no claim defendant ever physically injured anyone at any time. There is no claim defendant ever attempted to injure anyone at any time. There is no claim defendant ever threatened to injure anyone at any time. There is no claim defendant ever planned, conspired, agreed, aided, abetted, facilitated or encouraged anyone to physically harm anyone at any time2. There is no claim defendant ever possessed let alone

---

2 There is a claim on p. 14 of the Prosecution's detention memorandum where the prosecution claims an unidentified person, W1, apparently a cooperating witness, claims defendant was present when "other persons" expressed an intention to commit acts of violence and possession of weapons which would enable them to do so. There is no allegation that defendant made any such claim nor that he expressed an intent to join in those acts. Respectfully, it is an impermissible stretch to claim that because defendant was allegedly present when others expressed an intent to commit future acts of violence, defendant shared that intent by implication.

2

used a firearm or weapon of any type at any time. There is no claim defendant ever attempted to obtain nor transfer any weapon at any time for any purpose in connection with the underlying event or in connection with the activities at issue3.  Similarly there is no claim defendant ever possessed any handcuffs or flexi cuff restraints as has been alleged against other persons involved in the underlying event.

There is no evidence defendant participated in the planning of the underlying event nor that he played any role as a leader instructing others in what to do during the event, merely that he was one of allegedly thousands who participated in the event.  The only act that seems to distinguish defendant from thousands of other participants is that he used a shield to break a window and he, along with hundreds if not thousands, actually entered the capital.

The prosecution executed a search warrant at defendant's home.  No firearms were recovered nor any other weapons of any type nor explosives nor any materials suspected of being potentially utilized in connection with violence. A thumb drive was recovered at the defendant's home which

---

Those intents were expressed in connection with an intent to commit those acts on January 20, 2021, in conjunction with the presidential inauguration. Notwithstanding the statements of intent, the professed acts of future violence never occurred nor is there an indication they were attempted.
3 Defendant is retired military. Obviously, he possessed firearms in connection with his military service many years ago.

contained a variety of materials related to making weapons, explosive devices, etc.4.  The prosecution places great weight on defendant's possession of this thumb drive, (Pros. Memo p 16) There is no indication defendant nor anyone else ever attempted to use the materials on that thumb drive for any purpose. There is no indication defendant ever downloaded any of the material on that device nor that he even opened or accessed the material on that device.  The prosecution has not expressed any knowledge of how that material got onto the thumb drive nor how it ended up in defendant's home. Most significantly there is no indication the material on that thumb drive was ever accessed nor used by anyone for anything at any time5.

    The prosecution places great reliance on defendant's "membership" in the "Proud Boys" to infer that he is "dangerous." Upon information and

---

4 It has been claimed that the materials on that drive is principally a download of a publication called "*The Anarchist's Handbook.*"  Undersigned counsel "googled" "*The Anarchist's Handbook.*" It is a commercial publication that has been issued in multiple editions and updated versions since the 1970s.  It is available from numerous retailers, libraries, Amazon, Abe's Books, etc.  There was even a PDF version of it online which counsel opened and may have accidentally downloaded. The version opened contained materials much the same as that described in the prosecution's memorandum, particularly explosive devices, silencer devises, improvised weapons, poisons, etc..
5 Defendant's family has expressed the opinion that defendant's computer technology skills are so rudimentary that he could not open the thumb drive by himself if he wanted to.

belief, the defendant's contact and alleged involvement with the Proud Boys is relatively short lived and minimal. Upon information and belief, he had no involvement with Proud Boys prior to shortly before the events at issue. Based on disclosures made by the prosecution it seems defendant's only other "action" as a Proud Boy was that on December 12, 2020, he attended a "Make America Great Again" (MAGA) rally in support of then President Trump. There is no alleged criminal activity by defendant in relation to that event. This occurred shortly after defendant's introduction to the Proud Boys. Upon information and belief, his only other activity as a Proud Boy was discussing politics over drinks at bars on occasion.

The Defendant

The defendant is 43 years old and has never been convicted of a crime[6]. After graduating from Aquinas Institute in 1995, a Catholic High School in Rochester, NY he enlisted in the Marines Corps as a reservist. He served for 6 years and was honorably discharged with the rank of corporal. Upon leaving the military he began working with his father installing floors. After learning that trade he set off on his own starting De'Pezzola flooring in 2013; a floor installation company in his home town

---

[6] This memorandum is being prepared without a pretrial services report. The prosecution confirms that based on their records the defendant has no criminal history.

of Rochester, N.Y.. Defendant is the sole proprietor of that business. He currently employs 2 other installers, but on occasion, depending on business demands, has employed up to 4 installers. Their primary focus is commercial rather than residential accounts: hospitals, schools, offices, stores, etc.. Defendant has been lawfully gainfully employed his entire adult life. He is clearly not oriented toward a criminal lifestyle. Rather he has consistently made his living through honest lawful work.

The defendant is a lifelong resident of Rochester, N.Y., having lived there his entire life. His wife, children, parents, siblings, sole surviving grand parent and the majority of his extended family live in that area. If released he will return to that area awaiting trial. Having lived there his whole life it is extremely doubtful he would flee because he does not "know" anywhere else nor does he have substantial contacts anywhere else.

The defendant lives with his wife Lisa Magee[7]. They have been together 20 years. They have one child together, Angelina Pezzola, 16. The defendant has another child, Maria Pezzola from a prior marriage who resides in the same house and has done so virtually her whole life because defendant has had sole custody of her since her early childhood. Defendant is the sole supporter for the family. His wife is currently in graduate school

---

[7] Common law marriage.

pursuing a graduate degree in social work. Previously she had been employed as a Pre-Trial Services worker in the NY State Court System.

Upon learning of the warrant in the instant case the defendant contacted a lawyer in NY and made arrangements to voluntarily turn himself in. He did nothing to avoid law enforcement nor to avoid or delay capture[8]. When requested by Pretrial Services in NY he surrendered his passport as part of the release conditions in that Court.

## Defendant's Proposed Conditions of Release

Defendant's first request is that he be released on personal recognizance, consistent with the statutory presumption as the favored form of release. If the Court believes personal recognizance is not sufficient, defendant requests that he be released into the third-party custody of his wife, Lisa Magee. Ms. Magee was previously employed as a Pretrial Release Supervisor in the State Courts of NY. She fully understands the responsibilities and obligations of a third-party custodian, including her obligations to ensure that Mr. Pezzola appear when ordered to do so, that he complies with all conditions of release and that she inform the Court

---

[8] The prosecution claims that the defendant "changed his appearance," implying he did so to somehow evade capture. It is not clear what the prosecution is referring to but it appears most people would describe this "change of appearance" as his having trimmed his beard. In all other ways his appearance is the same as it was on January 6, 2021.

7

and/or Pretrial Supervisor of any violations of the conditions. Assuming defendant is permitted to return to the family home in Rochester, NY, pretrial supervision should be transferred there. If the Court feels additional supervision is warranted the defendant is requesting, he be released into the HISP program, that a GPS monitoring system be employed along with a reasonable curfew that permits him to work, support himself and his family.

## MEMORANDUM OF LAW AND ARGUMENT

Defendant submits that the order of detention should be vacated and that this court should set conditions of release in this case. The Bail Reform Act ("the Act"), 18 U.S.C. §§ 3142, et.seq., creates four bail options: release on personal recognizance, release on conditions, temporary detention and pretrial detention. The Act mandates pretrial release on personal recognizance or unsecured bond ("shall order the pretrial release. . . .", 18 U.S.C. § 3142(b)) unless the court determines that release will not reasonably assure the person's appearance or will endanger the safety of any person or the community. When personal recognizance or an unsecured bond is determined to be inadequate to guarantee appearance or safety, the Act still mandates release ("shall order the pretrial release. . . .", 18 U.S.C. § 3142(c)) subject to specified conditions. The conditions must be the least restrictive conditions necessary to reasonably assure the

defendant's appearance and the community's safety. *United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985), cert. denied, 479 U.S. 950 (1986).

There are several factors in the instant case which demonstrate that there are conditions of release which would both guarantee Defendant's appearance and assure the safety of the community. Defendant showed determination to voluntarily surrender himself upon learning of the warrant. He contacted a lawyer, was advised of his rights and then in conjunction with his counsel, voluntarily surrendered himself. Those actions do not indicate an intent to flee. There is nothing in the history of the defendant nor in the history of his actions in this case that show an inclination to flee.

Virtually all defendant's ties, family, professional and social are in his community in Rochester, N.Y. . He is a lifelong resident of the area. Since his ties to the community are substantial, there is no reason to think that he would flee or not return to court when given notice to do so.

Congress enacted the Bail Reform Act of 1984 to give courts the authority to consider factors such as the likelihood of flight and community safety in making release determinations. In passing the Act, however, Congress did not intend to authorize the wholesale pretrial incarceration of all persons accused of criminal offenses. Indeed, the Act expressly provides that "[n]othing in this section shall be construed as modifying or limiting the

9

presumption of innocence." 18 U.S. Code Section 3142(j). To the contrary, the passage of the pretrial detention provision of the 1984 Act bespeaks a recognition that "<u>there is a small but identifiable group of particularly dangerous [persons]</u> as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this <u>limited group</u> ... that the courts must be given the power to deny release pending trial." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, <u>reprinted in</u> U.S. Code Cong. & Ad. News 3189 (emphasis supplied). Notwithstanding the charge at issue, defendant should not be considered to be within that limited group. It is apparent from the Act's legislative history, as well as the statutorily mandated consideration of the least restrictive alternatives to detention, that Congress contemplated pretrial detention of only a small percentage of the individuals awaiting trial.

The legislative history of the Act also stresses that '[t]he decision to provide for pretrial detention is in no way a derogation of the importance of the [accused's] interest in remaining at liberty prior to trial. It is anticipated that [pretrial release] will continue to be appropriate for the majority of federal defendants." <u>Id.</u> at 7, 12, <u>reprinted in</u>, 1984 U.S. Code Cong. & Ad. News 3189. Defendant is among that majority for whom a combination of

conditions short of detention without bond can be fashioned to "reasonably assure" the safety of the community and his appearance for trial. *United States v. Orta*, 760 F.2d 887 (8th Cir. 1985). See also 18 U.S.C. §3142(c)(1)(B) (judicial officer shall order the pretrial release of an accused "subject to the least restrictive further condition or combination of conditions, that such judicial officer shall determines will reasonably assure the appearance of the person as required and the safety of any other person and the community") (emphasis supplied).   Courts have recognized that, consistent with the intent expressed in the 1984 Act's legislative history, the statutory scheme of Section 3142 continues to favor release over pretrial detention. See, *United States v. Orta*, 760 F.2d 887, 890-892 (8th Cir. 1985); *United States v. Miller*, 625 F. Supp. 513, 516-17 (D.Kan. 1985). In the instant case defendant's continued detention without bond is not the least restrictive alternative case; there are conditions available that will assure the community's safety and his return for future court dates. See *U.S. v. Xulam*, 84 F.3d 441 (D.C. Cir. 1996).

Title 18 U.S.C. Section 3142(e) provides for pretrial detention if the government is able to show that no condition of release will reasonably assure the accused's appearance as required and the safety of any other person or the community. See, *United States v. Salerno*, 481 U.S. 739, 741

11

(1987). Here there are conditions available which will reasonably assure the defendant's presence and safety of the community. There is no reason to believe that a 43-year-old with no record of criminal activity, who is gainfully employed with no history of violence nor flight, must be preventively detained because his release poses an unreasonable risk of flight or danger to the community.

Notwithstanding that the defendant has been indicted he is still presumed innocent. The defendant's ability to prepare a defense will be hampered by his pretrial incarceration.

Assuming the prosecution can prove the allegations they make did occur, it still has to be noted that at no time do they even allege the defendant personally attempted to physically harm anyone. They claim other individuals of the thousands who participated in the activities of January 6, 2021, did attempt to inflict physical harm on individuals. Still others expressed a desire and intent to do so. But they do not claim that there is evidence Mr. Pezzola personally did so. In view of that it is difficult to see how they can credibly claim there are no conditions of release that protect the community from the danger his release poses, particularly when they cannot point to any attempt by him to physically injure anyone.

Lastly, although the alleged accusations about the defendant's activities are of understandable concern, in assessing the danger his release poses defendant's alleged activities must be viewed in context. Notwithstanding that his beliefs were not rationally based; defendant was not acting out of criminal intent.  Defendant sought no personal nor pecuniary gain. Rather defendant acted out of the delusional belief that he was a "patriot" protecting his country.  Defendant is former military who is sworn to protect his country. He was responding to the entreaties of the then commander in chief, President Trump.  The President maintained that the election had been stolen and it was the duty of loyal citizens to "stop the steal9."  Admittedly there was no rational basis for the claim, but it is apparent defendant was one of millions of Americans who were misled by the President's deception. Defendant did not act out of criminal intent but out of conscience, albeit a frighteningly confused and distorted sense of conscience. Hopefully, as a result of this experience he has learned not be so gullible and will not be so easily duped again.  His solitary action in this

---

9 Press accounts of the underlying event are rampant with the universal claim by all protesters that they were acting at the behest of President Trump to save the country from a stolen election.  Many of those who heeded his call will be spending substantial portions if not the remainder of their lives in prison as a consequence.  Meanwhile Donald Trump resumes his life of luxury and privilege

case, measured against a history of being a law-abiding citizen for the last 43 years, safely predicts that he is more likely to resume behaving as a law abiding citizen if released pending trial. His history does not suggest that he is likely to resume the type of behavior that brings him before this court.

**WHEREFORE** for the foregoing reasons, and any others which may appear at a full hearing on this matter, and any others this Court deems just and proper, defendant through counsel, respectfully requests that he be released on personal recognizance.  If that request is denied defendant requests as an alternative that he be released on Third Party Custody and placed into the High Intensive Supervision Program of the Pretrial Services Agency conditioned on reasonable conditions including but not limited to work release and curfew.

Respectfully submitted,

_____/s/_____
Jonathan Zucker # 384629
37 Florida Av. NE
Suite 200
Washington, DC  20002
(202) 624-0784
jonathanzuckerlaw@gmail.com
Counsel for Dominic Pezzola

**CERTIFICATE OF SERVICE**

I certify that on February 10, 2021, I caused a copy of the foregoing Memorandum to be filed with the Clerk using the CM/ECF System which will send notification of this filing to all parties.

Courtesy copies were sent by email to the assigned AUSAs.


_____/s/_____