**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **No. 1:21-cr-52-1 (TJK)** |
| **v.** | : | |
| | : | |
| | : | |
| **DOMINIC PEZZOLA,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR BAIL TO PLACE**
**DEFENDANT ON CONDITIONAL RELEASE PENDING TRIAL**

On January 6, 2021, the defendant, Dominic Pezzola, was one of the first rioters to physically breach the U.S. Capitol, making way for others to enter and endanger the lives and safety of everyone inside, all in a bid to stop the Congress from carrying out its constitutionally mandated duty of certifying the results of the 2020 Electoral College vote. During his approximately 75-minute journey from the exterior of the Capitol grounds to the interior of the building, the defendant placed himself at the front of the crowd as it toppled police barricades and fought with police. Pezzola used the openings made in law-enforcement defenses by his cohorts to advance on the building itself in concert with them. During active clashes between rioters and police, Pezzola robbed an officer of his riot shield, which he then used to break a Capitol window, valued at more than $1,000, allowing himself and others to stream into the Capitol.

On March 16, 2021, after conducting a thorough detention hearing and considering the parties' written submissions and oral arguments, this Court ordered defendant Pezzola detained pending trial pursuant to 18 U.S.C. § 3142, finding that there is clear and convincing evidence that no conditions or combination of conditions of release can assure the safety of the community. *See* ECF No. 25.

On July 9, 2021, the defendant filed a motion for his release from pretrial detention, arguing that this Court's decision to detain him defendant was "out of line with relevant legal precedent, and is violative of the United States Constitution."[1]  Mot. at 42.  In his motion, the defendant raises no information that was both unknown to him at the time of the original detention litigation before this Court and that would have a material bearing on the detention decision.  The Court should accordingly decline to reopen the detention hearing and should deny the defendant's motion.

## PROCEDURAL HISTORY

On January 15, 2021, the defendant was arrested in Rochester, NY, pursuant to an arrest warrant issued by a magistrate judge in the District of Columbia.  He was presented in the Western District of New York on that same date, and he waived his right to hearings in New York, opting to consent to detention for transport to the District of Columbia.  Since his arrival in this district, the defendant has been housed at the Central Treatment Facility (CTF), one of two institutions run by the D.C. Department of Corrections (DOC).  Pezzola made his initial appearance in this district on January 27, 2021.  At that hearing, the government requested that the defendant be detained pretrial.  Following a hearing on that motion, a Magistrate Judge granted the government's motion for detention.

The defendant sought review of the magistrate's detention order before this Court.  Following briefing on that request, this Court held a detention hearing on March 1, 2021.  The Court heard fulsome arguments from both parties on that motion, and following the hearing, it

---

[1]     Although the defendant does not style his motion as such, the government requests that the Court treat his motion as a motion to reopen the detention hearing pursuant 18 U.S.C. § 3142(f)(2).  The defendant has had a full opportunity to litigate his detention status before both a Magistrate Judge and this Court.  If he wishes to reopen the detention hearing, he must satisfy the statutory requirements to reopen, which he does not do for the reasons explained below.

took the matter under advisement.  The Court issued a memorandum opinion on March 16, 2021, ordering the defendant detained defendant detained pending trial.

On July 9, 2021, the defendant filed the instant motion for release, which the government requests the Court treat as a motion to reopen the March 1, 2021 detention hearing.  For the reasons stated below, that motion is without merit and should be denied.

## LEGAL AUTHORITY

The Court can reconsider pretrial detention at any time before trial if the judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2); *United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014).  In other words, the statute requires that a movant provide information that is both "new" and "material."  *See United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020).

Previously available information—even if "material"—is not grounds to reopen a detention hearing.  *See Lee*, 451 F. Supp. 3d at 5. And any "new" information is only "material" if it is "essential to, or capable of significantly affecting, the detention decision."  *United States v. Worrell*, 2021 WL 2366934 at *9 (D.D.C. June 9, 2021); *see also Lee*, 451 F. Supp. 3d at 5 (stating that, for purposes of reopening a detention hearing, information has a "material bearing" on detention if it "casts different light on any of [the Bail Reform Act] factors," and citing Black's Law Dictionary (11th ed. 2019), which defines "material" as "[h]aving some logical connection with the consequential facts" or "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential.")).

Under the Bail Reform Act, courts consider the following factors in determining whether some condition, or combination of conditions, will reasonably assure community safety or the defendant's appearance at trial and pre-trial proceedings:  (1) the nature and circumstances of the charged offenses; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g); *see United States v. Bikundi*, 47 F. Supp. 3d 131, 133 (D.D.C. 2014); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 & n.1 (D.D.C. 2013).

<u>**Argument**</u>

The defendant has not proffered, let alone established, that any of the factual allegations in his motion were unknown to him at the time he initially contested the government's request for his detention.  Indeed, nearly all the facts cited by the defense that pertain to the defendant's specific characteristics were previously raised in his briefing papers regarding detention before the Magistrate and this Court.  *Compare* Mot. at 38-39 (recounting defendant's lack of criminal history, military service, family life, employment) *with* ECF No. 19 at 2, 8 (same) and ECF No. 15 at 5-6 (same).  The defendant similarly does not proffer that any of the other evidence he cites was unknown to him at the time of the first detention hearing before this Court.  But even if the Court assumes *arguendo* that all the allegations in the defendant's current motion were unknown to him on March 1, 2021, he has not established that the information he proffered "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community," as required to reopen the detention hearing.  *See* 18 U.S.C. § 3142(f)(1).  Finally, even if the Court decides to reopen the detention hearing, it should deny the defendant's motion on the merits.

The defendant makes, broadly speaking, five main arguments in support of his claim that he should be released from pretrial detention: (1) he claims that the conditions at the Central Treatment Facility require release,[2] Mot. at 15-31; (2) that the nature and circumstances of the offense do not support detention, Mot. at 31-38; (3) that the defendant's history and characteristics do not support detention, Mot. at 38-44; (4) that denial of bail violates his rights to Due Process and Equal Protection, Mot. at 44-52; and (5) that the Court should not consider the fact that he is charged with a violation of 18 U.S.C. § 1512(c)(2).   The vast majority of the information the defendant proffers to support these propositions was known to him in February 2021, and none are material to the question of whether the defendant's release poses a danger to any person or to the community.  *See* 18 U.S.C. § 3142(f)(2); *Worrell*, 2021 WL 2366934 at *9 (D.D.C. June 9, 2021) (information is material only if it is "essential to, or capable of significantly affecting, the detention decision").

I.      The Defendant has not Demonstrated that the Conditions at CTF Justify his Release.

The defendant's claims regarding access to discovery and counsel do not establish that he is entitled to the relief he seeks.  Mr. Pezzola claims that the conditions at CTF make confidential discussions with attorneys difficult, *see* ECF No. 65 at 18, and that he must be provided access to the voluminous discovery provided by the government in this case to date.  *See id.* at 22-23.   For these reasons, among others, the Defendant asserts that he should be released.  To be sure, the

---

[2]      This broad category is subdivided in the defendant's motion into three separate claims about his conditions of confinement: First, that the conditions of confinement have infringed on his right to confidential communications with counsel, Mot. at 15-22; second, that if he is not released, he must be granted access to a laptop, Mot. at 22-26; and third, that the Department of Corrections has committed human rights abuses while the defendant was incarcerated.  Mot. at 27-31.

defendant is entitled to reasonable access to discovery and the opportunity to meaningfully confer with counsel. But the defendant cites no authority suggesting that his complaints justify reopening the detention hearing and ordering his release. Indeed, the concerns raised by the defendant are entirely independent of the factors this Court must analyze in making a detention decision under the Bail Reform Act. Moreover, to the extent that CTF's pandemic-induced restrictive housing policies are relevant to the Court's dangerousness review, they were known to the defendant as of the March 1 hearing.[3]

The defendant also requests access to a laptop in his motion as an alternative to release. The defendant notes that CTF has a policy by which inmates are permitted to review voluminous or electronic discovery in restricted housing for up to two weeks at a time. See Mot. at 25; ECF No. 65-9 at 34-37. This policy referenced by the defendant was in place as of June 20, 2017, well before the initial detention hearing in this matter, see ECF No. 65-9 at 2, and in any event the defendant's access to a laptop is immaterial to the question of whether he would pose a danger if released. He has also not proffered to the Court whether he attempted to take advantage of the program and, if so, why he claims it is not sufficient to allow him to review discovery.

On March 30, 2020, a civil complaint was filed in the United States District Court for the District of Columbia, on behalf of defendants detained at the Central Detention Facility and CTF, alleging that DOC was failing to take reasonable precautions to prevent the spread and severity of a COVID-19 outbreak. That case, *Banks v. Booth* (20-cv-849), was assigned to Judge Kollar-

---

[3]     Defendant complains that a "contact" visit from his attorney results in a 14-day quarantine. Mot. at 18. The government notes that the current DOC policy only requires such quarantines for defendants who have elected not to be vaccinated. *See* https://doc.dc.gov/page/coronavirus-prevention and https://www.cdc.gov/coronavirus/2019-ncov/community/quarantine-duration-correctional-facilities.html (both websites last visited August 6, 2021).

Kotelly, who on April 19, 2020 issued a temporary restraining order (ECF No. 48), and on June 18, 2020, issued a preliminary injunction (ECF No. 100) that addressed, in part inmates' access to confidential legal calls in light of enhanced restrictions in place to address the pandemic, and ordered DOC to ensure that all inmates have access to confidential, unmonitored legal calls of a duration sufficient to discuss legal matters, and to "swiftly implement to use of such technology" necessary to accomplish this (ECF No. 100 at 39).

On December 12, 2020, *amici* filed a report to provide information to the Court regarding DOC's compliance with the Court's June 18, 2020, preliminary injunction (ECF No. 138).  That report noted that the DOC had purchased significant amounts of new technology to facilitate attorney client communications, including through the use of cell phones from within their cells; and that the DOC facilitated more than 1500 such calls each month.  The report also noted that DOC had purchased a number of tablets that inmates were permitted to use review discovery and to communicate with their attorneys using secure messaging (ECF No. 139 at 42).  Finally, the report noted that the DOC facilitated 1,209 videoconferences between attorneys and their clients between May and October 2020 (*Id.* at 40-41).[4]

On March 15, 2021, DOC issued a new procedure for voluminous electronic discovery, attached hereto as Exhibit A.  The policy is similar to, but more flexible than, the policy appended to the defendant's motion, and it would allow him to review electronic materials in his cell on a laptop provided by DOC.  The government's position is that this procedure satisfies the requirements of the Protective Order regarding discovery in this case, so it would not limit the defendant's access to sensitive materials.

---

[4]     On July 6, 2021, the D.C Circuit Court of Appeals found that the preliminary injunction had expired.

The defendant makes no attempt to explain why the program already in place at CTF is inadequate to allow him to review discovery.[5]   The defendant also claims—without any explanation or citation—that the waiver required by CTF "on its face has the potential to invade attorney-client privilege."   Mot. at 25; *see also* ECF No. 65-9 at 44-47.   It is unclear what, specifically, the defendant contends is potentially violative of attorney-client privilege, but if there is a problem with the waiver, the defendant should take the issue up with DOC, with involvement of the government and Court only if necessary.   Any allegedly offensive language in a waiver regarding discovery is not material to the Court's detention determination.[6]

The defendant similarly cites no authority—and the government is not aware of any—standing for the proposition that restrictive housing or any of the other conditions at CTF raised by the defendant entitle him to release under the Bail Reform Act, which is the relief he seeks in

---

[5]   The defendant also requests that if he is provided a laptop, he have the ability to email his attorneys and to take notes. Mot. at 57.   The defendant cites no authority in support of this demand, and in any event, it is irrelevant to his dangerousness.   He also requests a guarantee that "no one shall access the laptop in an effort to gain access to attorney client privileged materials."   He has not proffered that anyone is currently trying to access any privileged materials he may possess, and the government is aware of no such attempts.

[6]   The defendant also claims that the conditions of attorney-client visits at CTF require release because they are tantamount to an intrusion of the Attorney-Client privilege.   *See* Mot. at 19-22. We note that the cases cited by the defendant are inapposite, even to his proffered facts.   The defendant has made no allegation that any of the information stated in any meetings with his attorneys has made its way to the U.S. Attorney's Office or the FBI, much less that government counsel or agents were "eavesdropping" on privileged communications.   *See* Mot. at 20-22, citing *State v. Quattlebaum*, 527 S.E.2d 105 (S.C. 2000).   Nor is there any evidence that attorney-client phone calls involving the defendant "have been recorded and turned over to prosecutors."   Mot. at 16, n.12.   The defendant goes on to note that cases can be dismissed for those types of violations. If the defendant believes that there have been actionable violations of the attorney-client privilege at CTF, he can file a motion and seek any relief appropriate.   If he does so, the government will respond in due course.   But neither the information proffered by the defendant with respect to his communications with counsel at CTF, nor his hypotheticals about government intrusion into those interactions, are material to whether the defendant would pose a danger if released.

this motion.  He has cited to a U.S. District Court case holding that courts have the power to grant

some form of relief to pretrial detainees who complain of violations of their Constitutional rights

while in pretrial detention.  *See United States v. Medina*, 628 F. Supp. 2d 52, 55 (D.D.C. 2009)

(Lamberth, J.).  *Medina* involved procedures surrounding access to counsel and discovery, as well

as the security designation of the defendants, and Judge Lamberth held that he possessed the power

to grant the relief requested.  *Id.*  Notably, this defendant largely does not ask this Court to grant

the type of relief Judge Lamberth concluded that he had the authority to provide in *Medina*.[7]  He

also does not ask the Court to order CTF to grant relief from alleged human rights violations.  *See*

Mot. at 27-21.  He instead seeks his outright release, and the information he proffers does not meet

the standard set out in the Bail Reform Act, whether to reopen the hearing or to support a decision

to release the defendant on the merits.

II.      The Defendant has Presented No Information Regarding the Nature and
         Circumstances of the Offenses that Justify Reopening the Detention Hearing.

The defendant contends that the nature and circumstances of the offense favor his release.

*See* Mot. at 31.[8]  He does not allege that the nature and circumstances of the charges against *him*

have materially changed since this Court's original detention order, and his arguments are not

sufficient to rebut this Court's specific finding that the nature and circumstances of the offense

---

[7]      The defendant does request access to a laptop as an alternative to release.  The government
addresses that request *supra*.

[8]      The defendant also cites to the six factors first identified by Chief Judge Howell that judges
should consider in differentiating between January 6 defendants in *United States v. Chrestman*,
2021 WL 765662, at *7–9 (D.D.C. 2021).  *See* Mot. at 31-32, citing *United States v Frederico
Guillermo Klein*, 2021 WL 1377128 (D.D.C. 2021).  The defendant does not address those factors
specifically in his motion, but the government notes that the Court evaluated those factors in its
detention order issued on March 16, 2021.  *See* ECF No. 25 at 13 (After citing the *Chrestman*
factors, "Here, these considerations weigh strongly in favor of detention").

"weigh strongly in favor of detention." ECF No. 25 at 13. Defendant Pezzola instead cites to his co-defendant William Pepe—who is not detained, and against whom charges were added when the First Superseding Indictment was returned—as evidence that defendant Pezzola should be released. *See* Mot. at 34. Putting aside that each defendant's bond determination must be individualized, the defendant also ignores his *other* co-defendant's case: Matthew Greene has been detained pretrial since his arrest in April 2021, and he is charged with the exact same violations as Pepe. Following a detention hearing on August 2, 2021, this Court ordered defendant Greene detained pending trial. *See* ECF No. 68. The nature and circumstances of the charges against all three defendants charged in this indictment are gravely serious, something this Court has noted in detention hearings for two defendants in this case, as well as the four defendants charged with similar offenses in *United States v. Nordean, et. al.*, No. 21-cr-175 (TJK). The fact that the grand jury returned additional charges against one co-defendant who remains on bond, while another co-defendant facing the same charges remains detained, does not have a material bearing on whether there are conditions of release that can satisfy the safety of any other person and the community as to Pezzola, as required to reopen the hearing under 18 U.S.C. § 3142(f)(2).

The defendant also takes issue (Mot. at 34-35) with the government's quantum of proof on Counts Four and Five, which relate to his robbery of a U.S. Capitol Police riot shield. The defendant pays lip service to the Grand Jury's finding of probable cause that he took the shield by "force and violence and by intimidation . . . from the person and presence of a Capitol Police officer." *See Id*. at 34. He then contends that because "people who were there [on the Capitol grounds on January 6] would then pick material up off the floor, such as shields that the officers dropped on the floor," that the defendant's behavior is not tantamount to taking the shield by force and violence. *Id.* at 34-35.

The defendant fails to grapple with the strong evidence against him.  Pezzola is *captured on video* reaching for USCP riot shield that is clearly still in the officer's possession, then falling backwards out of the fray while in possession of a riot shield:[9]



---

[9]      The government laid this sequence out in detail in its earlier detention filings in this case. We thus include only a brief summary here for the Court's convenience.  Should the Court re-open the hearing, the government plans to submit that video in connection with the hearing.



The preceding two photographs were taken seconds apart and show the defendant reaching a black-gloved hand towards a riot shield that is still attached to a Capitol police officer engaged in active riot control, then emerging from a scrum in possession of a riot shield.  The defendant has had possession of this video through prior counsel since February 25, 2021, and he makes no attempt in his pleading to explain how the video evidence supports his assertion that he "never had any contact with officers where he took the shield from the officer," and that "an officer dropped his shield and Dom merely picked it up off the floor."  *Id.* at 35.

If the defendant's memory of the events of January 6 is in fact that he picked the shield up off the floor, he certainly knew of that information at the time of the first detention hearing before this Court, and he could have presented that theory affirmatively.  He instead chose not to.  *See* Mar. 1, 2021, Hr'g Tr. 9:25-10:11.  In any event, the defendant's contention that he picked the shield up off the floor is not material to detention, given the strength of the government's evidence as outlined above and in its prior detention pleading before this Court, *see* ECF No. 21 at 10-15, and in light of the rest of the government's evidence in this case, which includes evidence of the defendant's prior planning regarding radios, his brazen and flagrant disregard for the rule of law

on January 6, and his possession of bombmaking instructions in his home.  *See* ECF No. 25 at 17-18.

III.    <u>Defendant Proffers Nothing New and Material about his History and Characteristics.</u>

The defendant proffers a litany of factors about his history and characteristics that he claims require his release from prison, including his age, his lack of a prior record, his military service, and his community and family ties.  *See* Mot. at 38.  Each of those factors was not only known to the defendant at the time of the March 1 hearing, but they were also each proffered to the Court by the defense and considered by the Court in its detention ruling.  *See* ECF No. 25 at 16.  The Court has already considered history and characteristics proffered by the defendant and has found that they do not tip the scales in favor of release.

The defendant also claims that the government cannot prove his dangerousness to the community or to any other person by clear and convincing evidence, in light of his proffered history and characteristics and case law decided after March 1, 2021, including *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021).   Although *Munchel* was decided after the detention hearing in this case, this Court's analysis was sound under both *Munchel* and the D.C. Circuit's other published detention decision arising out of the January 6 cases, *United States v. Hale-Cusanelli*, --- F.4th ---, 2021 WL 2816245 (D.C. Cir. July 7, 2021).

Pezzola—who rushed past barricades toppled by violence against police committed before his eyes, who stole a police riot shield by force and violence, and who physically broke through a window with that shield, causing more than $1,000 of damage—fits squarely into the "more dangerous" category of January 6 defendants as identified by the D.C. Circuit.  *See Munchel*, 991 F.3d at 1284 ("In our view, those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated

such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way"). The defendant claims that he engaged in no violence on January 6. Even if the Court accepts that view—which it should not—the Circuit has recently clarified that its holding in *Munchel* does not stand for the proposition "that only those persons who participated in violence on January 6 could properly be considered as posing a future danger to the community justifying pretrial detention." *Hale-Cusanelli*, 2021 WL 2816245, at *5. Rather, as the Circuit explained, "[t]he point of Munchel was that everyone who entered the Capitol on January 6 did not necessarily pose the same risk of danger and the preventive detention statute should apply to the January 6 defendants the same as it applies to everyone else."

*Munchel* and *Hale-Cusanelli* reinforce that the Bail Reform Act contemplates an individualized assessment of his dangerousness. See 18 U.S.C. § 3142(g) (factors to be considered in ruling on detention). The Court thoroughly engaged in such an assessment in this case in March, weighing the factors specified by the Bail Reform Act and making an individualized assessment of defendant Pezzola's dangerousness.   The information raised by the defendant about his history and characteristics is neither new nor material to the Court's analysis.

The defendant's arguments that the events of January 6 are unique is also not new.  *See* Mot. at 41-43. In the defendant's first motion for this Court to review the magistrate's detention decision, he claimed the events of January 6 were an "aberration," ECF No. 19 at 7, and argued that because the Inauguration passed without incident, the Court should discount the risk that the defendant would commit future violence.  *Id.* at 5, n.1.  This Court already addressed those arguments, including by finding that the defendant's actions on January 6—which included Pezzola's planning by arranging concealed means of communication, facilitating the lawlessness of others, robbing an officer of his shield, breaking the Capitol window with that shield, and taking

many of these actions against explicit orders of law enforcement—"reflect the depth of a defendant's disregard for the safety of others, for our democratic institutions, and for the rule of law, necessarily reflect the significance of the immediate threat a defendant presents to the community in which he resides and the threat posed by his disrespect for the U.S. Constitution and official directives to the nation as a whole."  ECF No. 25 at 18-19 (internal quotations omitted). The defendant also ignores this Court's analysis of his associates' statements regarding future violence and the bomb-making material found in his home.[10]  *Id.* at 19.[11]

IV.    Defendant Has Not Established a Constitutional Violation as a Result of Other Defendants' Release.

The defendant points to several cases, Mot. at 44-48, where other defendants in various types of cases from across the country have been granted bail.  He also refers to several defendants who have been released in connection with the events at the Capitol on January 6, 2021. *Id.* at 48-52.  He claims, without citation, that the Court's decision to detain him pretrial in this case, in light of these others, amounts to a denial of his rights under the Due Process and Equal Protection Clauses of the Constitution.  *See id.* at 44.

---

[10]    To the extent that the defendant argues that because President Biden was inaugurated, there is no reason to fear future violence based on the events of January 6, that argument is neither new nor material.  *See* Mot. at 42.  Both detention hearings in this case took place after January 20, 2021, so the fact that President Biden had been inaugurated was known to the movant at the time of the hearings.  Moreover, President Biden's inauguration—which took place under heavy National Guard protection—does not foreclose the future threat of political violence generally.

[11]    The defendant also claims that "there has not been an adequate demonstration that the crimes under which he has been charged qualify as violent under the meaning of the Bail Reform Act." Mot. at 43.  He also claims that the offenses with which he has been charged "do not qualify for detention." *Id.* at 41.  He does not support either statement with a citation or argument.  Without any authority or argument, the Court should not consider these claims.  Should the defendant present such authority or argument in his reply brief, the government requests leave to file a surreply.

Many of the cases the defendant cites were available to him at the time of the initial litigation over his detention.  Setting that aside, he has not argued, let alone demonstrated, that the cherry-picked examples he offers would have materially altered the Court's analysis.  As to those cases listed from pp. 44-48 of his motion, which relate to defendants charged across the country, all but three are state-level cases.  Of the three remaining, one—*United States v. LaDonia Bogg*, referenced on p. 48, is being prosecuted in D.C. Superior Court.  Detention in all the state cases and *Bogg* are governed by their local bail statutes, not the federal Bail Reform Act, and are thus not useful points of comparison for the Court.[12]  The two federal cases cited by the defendant— *United States v. Weisselberg* and *United States v. Loughlin, et. al.,* (Mot. at 45)—involve allegations of fraud and related charges, which are treated much differently under the Bail Reform Act than the charges in the defendant's case, which involve a rebuttable presumption in favor of detention, at least one crime of violence, and a federal crime of terrorism.  *See* ECF No. 25 at 14-15.

The January 6 cases cited by the defendant—even those decided after the defendant's detention hearing in March—are also immaterial to the Court's detention decision.  As noted above, this Court must make an individualized decision as to the defendant's dangerousness, based on the factors laid out in 18 U.S.C. § 3142.  That is exactly what the Court did in March.  Moreover, none of the cases cited by the defendant are apples-to-apples comparisons to the defendant's case.  Of the 17 cases arising from the events of January 6 referenced by the defendant,

---

[12]    Nor do the charges in the state cases, some of which include homicide offenses, provide useful comparisons for the Court.  *See* Mot. at 3 ("Dominic isn't charged with murder, and individuals around this Country, charged with more serious crimes are granted bail").  Pretrial detention under the Bail Reform Act has been upheld countless times for non-homicide offenses, most recently in this Circuit in *Hale-Cusanelli*, 2021 WL 2816245 (D.C. Cir. 2021).

seven are definitively misdemeanor-only. None allege conspiracies. Very few involve charged crimes of violence, and only one involves a charged violation of 18 U.S.C. § 1361. In the § 1361 case, it is unclear from either the defendant's proffer or the charging documents whether that the charged violation is a felony or misdemeanor. The defendant has, in short, not demonstrated an Equal Protection or a Due Process violation with regard to his detention status.[13]

V.   The Defendant's Actions in Obstructing the Electoral College Vote Weigh in Favor of Detention.

The defendant contends that the Court should not consider what he characterizes as the most serious charges against him—obstruction of the Electoral College vote and conspiracy to commit the same—in its detention analysis. *See* Mot. at 52-53. He argues that the government cannot prove the obstruction charge because he entered the Capitol after the vote had been suspended, *see id.* at 53, and because "the government cannot argue that Dom's and other protestors' lawful presence outside the Capitol was intended to 'influence' the vote counting inside." This argument was available to the defendant, had he chosen to make it at the initial detention hearing, but even if it had not been it does not have a material bearing on the Court's detention analysis. Pezzola was one of the first rioters to enter the building, at approximately 2:14 p.m.—before either chamber of Congress had been locked down or evacuated. The defendant also makes no attempt to substantiate his bald claim that his and other rioters' presence outside the Capitol was "lawful," and indeed the government's evidence as adduced at the first hearing

---

[13]   The defendant claims that his continued detention violates his Due Process rights only in a subject header, and his claim that his pretrial detention violates the Equal Protection Clause is made without citation to any authority or any developed argument. The Court should thus not consider the merits of those claims. Should the defendant raise any authority or substantive argument on these points in its reply, the government respectfully requests leave to file a surreply on those topics.

establishes that the defendant was one of the first to breach not only the Capitol building, but also its grounds (shortly after the mob overran a line of police officers), and that he participated in the mayhem by robbing an officer of his riot shield, among other things. The defendant cannot credibly claim that his presence on Capitol grounds, but outside outside the building was "lawful."[14]

Moreover, as this Court noted in its decision to hold the defendant in March, and as the defendant does not challenge now, "[b]efore the Capitol could be secured, Pezzola uploaded a victory speech to social media. Smoking a cigar, he exclaimed: 'Victory smoke in the Capitol, boys. This is f***ing awesome. I knew we could take this motherf***er over [if we] just tried hard enough.' Pezzola concedes that he smoked the victory cigar because 'he considered the objective achieved, stopping the certification of the election pursuant to the instructions of the then President.'" ECF No. 25 at 6 (internal citations omitted). The fact remains that prior to smoking that cigar, the defendant did try quite hard, with others, to take that building over: he rushed past trampled barriers, stole a riot shield, charged up the stairs after the breach of a police line, yelled "we're not f***ing stopping!" at a line of Capitol Police officers, and was one of the first rioters in the building. The defendant has conceded that he smoked the victory cigar because "he

---

[14]    The defendant's invocation of Senator Chuck Schumer and FBI Attorney Kevin Clinesmith, Mot. at 53-54, fails both the newness and materiality prongs of the Court's inquiry into whether to reopen the detention hearing. Indeed, although the defendant argues that he should be released in part because Clinesmith "received mere probation, after being charged with violating this provision," referring to 18 U.S.C. § 1512, Clinesmith was in fact charged with and pled guilty to a violation of 18 U.S.C. § 1001(a)(3). *See United States v. Clinesmith*, No. 21-cr-165 (JEB), Doc. 1. The defendant's request for discovery regarding "Code Pink" protestors similarly does not move the needle for this Court on detention, and the Court should not entertain it as a discovery motion in its current form. As an initial matter, on its face, the defendant's request only relates to charging documents, which absent a sealing order are publicly available. The Court should instruct the defendant to make any discovery requests to the government in the first instance, and then if there are disputes to raise them with the Court.

considered the objective achieved, stopping the certification of the election pursuant to the instructions of the then President." ECF No. 25, at 6, quoting ECF No. 19 at 4.

The government's evidence of the defendant's obstructive and destructive intent on January 6 is strong. As the Court noted in March, Pezzola's actions "show a willingness to use violence and to act in concert with others to obstruct essential functions of the United States government. And Pezzola's refusal to obey the lawful orders of law enforcement throughout the day suggest that he would not comply with conditions of release to keep the public safe." ECF No. 25 at 15. Nothing the defendant has proffered is material to that finding, as he acknowledges. *See* Mot. at 54 ("At best, [the obstruction charge] is the only factor which weighs against Dom in favor of pretrial detention but is outweighed by all the other factors").

**<u>Conclusion</u>**

The defendant has not proffered any new facts that would materially alter this Court's decision to detain the defendant, following a thorough hearing in March 2021.  For the foregoing reasons, and any as may be cited at a hearing on this motion, the defendant's motion should be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
DC Bar No. 415793

By:  __/s/ *Erik M. Kenerson*_____
ERIK M. KENERSON
Assistant United States Attorney
Ohio Bar Number 82960
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530
Telephone: 202-252-7201
Email: Erik.Kenerson@usdoj.gov