# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

*v.*

**DOMINIC PEZZOLA,**

        *Defendant.*

**No. 21-cr-0052 (TJK)**

## DEFENDANT PEZZOLA'S REPLY
## MEMORANDUM IN SUPPORT OF
## MOTION FOR MODIFICATION OF BAIL

On this record, the government prematurely concludes "that no condition or combination of conditions of release would reasonably assure the safety of the community." *Cf. United States v. Tanios*, No.21-3034 (D. C. Cir., Sept. Term 2020), 1:21-cr-00222 (TFH) (*citing United States v. Munchel*, 991 F.3d 1273, 1282 (D.C. Cir. 2021).

The *Tanious* Court held as follows:

> Although appellant has not shown that the district court applied a presumption of detention in contravention of the Bail Reform Act and precedent, *see United States v. Khater*, No. 21-3033, Judgment at *2 (D.C. Cir. July 27, 2021) (*per curiam*), the district court clearly erred in its individualized assessment of appellant's dangerousness. The record reflects that Tanios has no past felony convictions, no ties to any extremist organizations, and no post-January 6 criminal behavior that would otherwise show him to pose a danger to the community within the meaning of the Bail Reform Act. Cf. *Munchel*, 991 F.3d at 1282-84 (remanding pretrial detention orders where the district court did not demonstrate it adequately considered whether the defendants present an articulable threat to the community in light of the absence of

> record evidence that defendants committed violence or were
> involved in planning or coordinating the events of January
> 6).

*Id.*

Here, the Government concludes, "[d]efendant has not proffered any new facts that would materially alter this Court's decision to detain the defendant, following a thorough hearing in March 2021." (*See* Government's Opposition to Defendant's Motion for Bail to Place Defendant on Conditional Release Pending Trial at p. 20). We submit that the Government is just plain wrong. On the full record, and at an in-person hearing[1] on this matter, we believe the Defendant justifies being released on bail.

Similarly, here, in the case of Dominic Pezzola ("Dom," "Mr. Pezzola" or "Defendant"), the Defendant has no past felony convictions, and "no post-January 6 criminal behavior that would otherwise show him to pose a danger to the community within the meaning of the Bail Reform Act." *Id.* (*citing Munchel*, 991 F.3d at 1282-84. The government cannot demonstrate to this Court that Dom presents "an articulable threat to the community" because the record is devoid of a showing that Dom "committed violence or [was] involved in planning or coordinating the events of January 6". *Id.*

---

[1] At the last conference, the Court scheduled a virtual hearing on this matter for September 2, 2021. Based on conversations with our client, he has requested that we make an application for an in-person bail hearing, not a virtual one. Considering that, we are asking the court to schedule an in-person bail hearing at a date/time that is convenient for all the parties; September 2, is not good for an in-person hearing for undersigned counsel.

## I.   OVERVIEW.

The government is very much aware that it lacks clear and convincing evidence of dangerousness under the meaning of the Bail Reform Act.  The government is also equally aware that it cannot prove that Dom is a flight risk by a preponderance evidence. Because of this, and since the inception of this case, the government has distorted truth and misrepresented facts in a deliberate effort to compensate for its inability to demonstrate that Dom should be detained pretrial.  The government's continued misrepresentation and over charging is evidenced in its snap shots and explanation of Pezzola obtaining a shield "by force and violence and by intimidation. . .". *See* Section Two, *infra*.

According to the government, its main opposition to the instant motion is that:

> ". . . information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *See* ECF. Doc. No. 69: Government's Opposition to Defendant's Motion for Bail to Place Defendant on Conditional Release Pending Trial, at p. 3 (*citing* 18 U.S.C. § 3142(f)(2); *United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014).

The entire basis of the government's opposition is that the movant did not provide information that is both "new" and "material." *Id.* (*citing United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020).

## II.   Motion to Reopen: Under 18 U.S.C. 3142(f)(2).

In the Government's opposition its writes that:

> [the] government requests that the Court treat his motion as a motion to reopen the detention hearing pursuant 18 USC 3142(f)(2).  The defendant has had a full opportunity to litigate his detention status before both a Magistrate Judge and this Court.  If he wishes to reopen the detention hearing, he must satisfy requirements to reopen, which he does not do for the reasons explained below.

*See* ECF. Doc. No. 69: Government's Opposition at p. 2, FN 1.

The statute states:

> "The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C.A. § 3142 (West).

We submit that several new factors and information has come to light of undersigned counsel[2], that justifies this Court re-visiting Defendant's bail application. And lest not forget that the defendant retains the presumption of innocence[3].

---

[2] Undersigned counsel did not represent the defendant during his prior bail application.  As such, the defendant should not suffer if his attorney failed to bring forth relevant factors relevant to the bail application.

[3] **(j) Presumption of innocence.**--Nothing in this section shall be construed as modifying or limiting the presumption of innocence.  18 U.S.C.A. § 3142 (West).

### III.   LAW AND ARGUMENT

### POINT ONE:
### DEFENDANT PEZZOLA HAS CLEARLY DEMONSTRATED THAT THE CONDITIONS AT DC JAIL (CTF) JUSTIFY HIS RELEASE

The government misses the point about the defendant's access to the discovery as relevant to the bail application. If there is absolutely no condition by which he can review the discovery while he is incarcerated in a meaningful manner, that factor must be taken into consideration when evaluating an application for bail. If a defendant is denied the opportunity to participate in his own defense, including reviewing discovery material, then a clear appellate reversable issue would exist if a trial occurred and the defendant claimed he was denied the opportunity to review discovery and participate in his own defense.

The computer policy in place at the CTF is not constitutionally sufficient to guarantee that the defendant has a full and meaningful access to a laptop to review discovery. As we noted in our opening application, laptop policies around the country provide defendant's more access than what the CTF policy allows. For example, a prisoner in New York has access to a laptop 7 days a week, more than 12 hours a day.

The DOT Policy[4], dated March 15, 2021, provided by the Government raises a number of issues that create a number of problematic matters that will deny defendant fully and adequate access to a laptop to review discovery.

---

[4] Procedure for Voluminous or Electronic Evidence Review at the Department of Corrections During the COVID-19 Pandemic (dated March 15, 2021).

We draw the court's attention to some of the problems with the policy:

(1) Electronic discovery (i.e., CD's, DVD's, USB flash drives) cannot be mailed to the prisoner (*See*, ¶ #1 of Policy);

(2) After receipt of the discovery, the inmate will be put on a waitlist to review the discovery. (*See*, ¶ #2 of Policy);

(3) An inmate will be allowed up to two(2) weeks to review the electronic evidence and if he needs more time, there is a waitlist (*See*, ¶ #3 of Policy);

(4) If an inmate needs more time, he may file a grievance (*See*, ¶ #3 of Policy);

(5) After an inmate has conducted his review, the attorney should collect the evidence (*See*, ¶ #5 of Policy);

(6) There is no "guarantee that inmates will review any and/or all evidence provided to the DOC." (*See*, pg. 2 of Policy);

(7) "Currently, there is a several week's long waitlist to review evidence on laptops at DOC which fluctuates depending on the demand for this service." (*See*, pg. 2 of Policy);

(8) "[C]ontact and contactless in-person attorney visits resumed at the DOC on June 22, 2020, and are still available to defense attorneys." (*See*, pg. 2 of Policy). We note for the record that we submitted a request to visit another client on August 12, 2021, and to date haven't received a response; and

(9) "A contact visit will result in an inmate being placed in a medical enhanced monitoring unit for up to 14 days following the visit." (*See*, pg. 2 of Policy). So, if we were to visit our client, he would be penalized and placed in medical solitary confinement as a result of seeing his counsel face-to-face.

The totality of the program does not muster a constitutional challenge about a defendant having adequate access to the discovery and participating in his own defense. Considering the constitutionally deficient program at DOC, bail should be granted.

### POINT TWO:
### DEFENDANT PEZZOLA HAS PRESENTED ADEQUATE INFORMATION REGARDING THE NATURE AND CIRCUMSTANCES OF THE OFFENSES THAT JUSTIFY REOPENING THE DETENTION HEARING
### (Defendant's Response to Government's Point II)

The government has a duty to disclose all material that is not just exculpatory, but favorable to the accused, sufficiently in advance of a trial.  Further, the Government has an ongoing duty to disclose such materials.  The Government's recent disclosures about the delays in disclosing discovery is a new circumstance and new information that was not available at the prior bail application.

The government is further obligated to disclose all material that can be considered exculpatory, impeachment, etc. pursuant to the Rules of Evidence and Supreme Court precedent.[5]

The Government in recent court appearances have publicly acknowledged that they most likely will not be able to satisfy all their discovery obligations, especially their obligations to disclose all *Brady* materials.[6]

---

[5] (*See, e.g., Brady v. Maryland*, 373 U.S. 83 (1963); *Kyles v. Whitley*, 514 U.S. 419 (1995); *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Agurs*, 427 U.S. 97 (1976); *United States v. Bagley*, 473 U.S. 667 (1985); *Strickler v. Greene*, 527 U.S. 263 (1999); *Mackabee v. United States*, 29 A.3d 952 (D.C. 2011) and *Miller v. United States*, 14 A.3d 1094 (D.C. 2011)).
[6] *See*  https://beckernews.com/22-the-doj-admits-it-is-withholding-potentially-exculpatory-evidence-in-january-6-criminal-cases-in-legal-filing-40792/

Mr. Pezzola should not remain in prison any longer unless the government states affirmatively that every single piece of discovery, including information favorable to the accused has been disclosed.  If not, Dom should be released on bail.

The Government has publicly stated that materials, such as grand jury transcripts, videos, exculpatory material, and other materials may not be fully disclosed until 2022. No defendant should remain in prison, especially a defendant that is not charged with the death of someone, be denied bail.

The government contends that the defendant "took the shield by 'force and violence and by intimidation . . . from the person and presence of a Capitol Police Officer." *See* ECF. Doc. No. 69: Government's Opposition at p. 10.  Undersigned defense counsel watched and rewatched DSC_0006.mov (a video provided by the government) multiple times and what we see is Dom picking up the shield off the ground – no force, no intimidation, no violence in obtaining the shield. (DSC_0006.mov at 58 seconds to 1:05 minute).

The government contends that his prior counsel had access to this video, and other discovery, and failed to explain it.  Dom should not suffer for any failures that can be attributed to prior counsel.

### POINT THREE:

---

https://www.npr.org/2021/07/27/1013500073/the-justice-department-is-struggling-to-bring-capitol-riot-cases-to-trial-heres-; https://www.nytimes.com/2021/08/10/us/politics/jan-6-investigation-evidence-speedy-trials.html; https://www.washingtonpost.com/local/legal-issues/capital-riot-evidence-cost/2021/07/16/d5e81bdc-e404-11eb-8aa5-5662858b696e_story.html

**DEFENDANT PEZZOLA HAS ESTABLISHED A CONSTITUTIONAL VIOLATION AS A RESULT OF OTHER DEFENDANTS' RELEASE
(Defendant's Response to Government's Point IV)**

Section 1 of the Fourteenth Amendment states:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; **nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.**

(emphasis added)

If individuals across the United States are charged with similar or harsher crimes than the defendant, and they are being released on bail, that is clearly a denial of equal protection of the law. The fact that a defendant committed a crime at The Capitol should not weigh more heavily against him, then if he committed a similar crime elsewhere.

That the Court's prior ruling and the government's position, are entirely out of line with legal precedent as demonstrated by the fact that persons accused of far more egregious crimes under analogous circumstances have consistently been released because the of the strength of the Bail Reform Act's presumption against pretrial detention.

Some examples of cases where bail was granted are:

(a) Elizabeth Ann Duke, a member of the radical and extremely violent M19 terrorist group, who materially participated in the bombing of the United

States Capitol's Senate Chamber on November 7, 1983.  Despite being charged with multiple crimes related to domestic terrorism, including the possession of stolen explosives, possession of instruments of forgery, and falsified identification documents- Elizabeth Duke was released on bail during a time that the Bail Reform Act did not even exist. (*See United States v. Elizabeth Duke*, Case No. 2:58-cr-00222 (MSG); Criminal Docket:  ECF Document No. 69, (filed June 20, 1985).

(b) In the case of *United States v. Robinson*, where on May 28, 2020, Dylan Shakespeare Robinson was granted pretrial release by the U.S District of Minnesota despite materially participating in a nationally televised coordinated attack on Minnesota's 3rd Precinct, where after breaching the doors, the interior was set ablaze with officers still inside.[7] (*See United States v. Robinson*, Order Setting Conditions of Release, Case #: 0-20-cr-00181 (PJS) (BRT), ECF Doc.#: 12.

(c) On May 30, 2020, Utooj Rahman and Colinford Mattis firebombed an NYPD vehicle parked on a Brooklyn, New York street, without regard for the safety of thousands of protesters and police.  Rahman and Mattis were subsequently charged with several violent felonies and faced over forty years in jail if convicted.  Even so, the Eastern District of New York granted bond, and the Second Circuit Court of Appeals affirmed.[8] (*See United States v. Mattis*, 963 F.3d 285 (2d Cir. 2020). Defendants Rahman and Mattis were subsequently charged with several violent felonies, and nonetheless release on pretrial bond.

(d) *United States v. Chrestman,* 2021 WL 765662 (D.D.C February 26, 2021), slip op. at*1-2 (detention ordered for Proud Boy defendant who brandished an axe handle; wore a tactical vest, a hard helmet and a gas mask; toppled the metal barriers used by police to hold back the crowd; was on front lines and threatened a police officer, "You shoot and I'll take your fucking ass out"; encouraged others to interfere with police officers' arrest of a protester; and used his axe handle to prevent police from closing barriers to Capitol building), *with United States v. Cua*, 2021 WL 918255 (D.D.C. March 10, 2021), slip op. at *1 (detention not justified for defendant who previously called for execution of elected officials and "glorified violent protest," and who on January 6, 2021, walked through Capitol building twirling a black baton,

---

[7] *U.S. v. Robinson*, *Order Setting Conditions of Release* (ECF Document No. 12 July 14, 2020).

[8] *United States v. Mattis*, 963 F.3d 285 (2d Cir. 2020).

attempted to open office doors in the Capitol, thrice shoved aside a police officer to enter the Senate Chamber, sat "atop the Senate dais in the chair previously occupied by former Vice President Mike Pence, with his feet up on [] the desk," and photographed senators' papers in the chamber).

(e) *United States v. Hunter Ehmke*, 21-cr-29 (TSC) (detention not justified for defendant who broke window of Capitol building and did not cease when ordered to do so by police officer)

(f) *United States v. Jones*, 21-mj-76 (ZMF) (government did not seek detention for defendant who violently broke glass of doorway to House chamber (doorway Ashley Babbitt tried to climb through seconds later));

(g) *United States v. Gossjankowski*, 21-cr-123 (PLF) (government did not request detention for defendant who activated taser in Capitol multiple times); *United States v. Miller*, 21-cr-75 (RDM) (detention not justified for defendant who discharged fire extinguisher onto police officers and used a crowd barrier fence as a ladder to scale the Capitol building walls);

(h) *United States v. Powell*, 21-cr-179 (RCL) (detention not justified despite presumption of detention for crime of violence for defendant who used a battering ram to break a window of the Capitol, climbed in, came back out, used bullhorn to direct others inside with what seemed to be detailed knowledge of the floor plan, and exhorted others to break another window);

(i) *United States v. Leffingwell*, 21-cr-5 (ABJ) (government did not request detention of defendant who repeatedly punched a police officer at Capitol with a closed fist and breached line of officers attempting to keep people out of the building);

(j) *United States v. Biggs*, 21-mj-126 (RMM) (detention not justified for Proud Boy defendant who posted plans on social media before attack, was at front of crowd who breached and entered Capitol building within 20 seconds of breach, and communicated with other Proud Boy members with walkie-talkies during riot);

(k) *United States v. Capsel*, 21-mj-122 (RMM) (detention not justified for defendant captured on video physically fighting National Guardsmen who were attempting to hold a boundary, and who did not desist until he was sprayed with pepper spray);

(l) *United States v. Colt*, 21-cr-74 (TFH) (government did not request detention of defendant wearing assault gear who scaled the wall of the Senate chamber, later proclaimed on social media that he was the first person to sit in former Vice President Pence's chair, and called Speaker Pelosi a "traitor");

(m)   *United States v. DeCarlo/Ochs*, 21-cr-73 (BAH) (government did not request detention for Proud Boy organizers who planned and fundraised for the riot, one of whom had Proud Boys name tattooed on his body, who posted their obstructionist intent on social media, defaced the Capitol building with the words, "Murder the Media," and took flexicuffs from the Capitol);

(n) *United States v. Bisignano*, 21-cr-36 (CJN) (detention justified for defendant accused of being an "instigator, a director, and an active participant in the violence, destruction and obstruction at the Capitol," who was on the front lines pushing against the police, shouted through a bullhorn, "Everybody, we need gas masks! We need weapons! We need strong, angry patriots to help our boys!" and who is charged with destruction of property);

(o) *United States v. Cudd*, 21-mj-68 (TNM) (government did not request detention for defendant who livestreamed video from inside Capitol building stating that to gain entrance "we just pushed, pushed, and pushed, and yelled go and yelled charge," and said "fuck yes, I am proud of my actions, I fucking charged the Capitol today with patriots today. Hell, yes, I am proud of my actions," and later told a new station, "Yes, I would absolutely do it again").

Overall, these line of cases, establish the continued enforceability of the Bail Reform Act's presumption against pretrial detention. *Id.*; *See also* Section III, Introduction, *supra*. Especially, during circumstances where in can be reasonably inferred that a person's actions arise from an ardent desire to openly criticize the actions of government. The Court's granting of the government's motion for against pretrial release, when viewed in light of the *Duke-Robinson-Mattis-Munchel*, is grossly unjust because the objective facts regarding Dom's personal history. The fact that Dominic remains detained simply cannot be justified.

**POINT FOUR:**

**AS A MATTER OF LAW, *MUNCHEL* DOES NOT CREATE A PRESUMPTION OF DETENTION FOR THOSE ACCUSED OF VIOLENCE OR PROPERTY DAMAGE ON JANUARY 6 AND THAT PEZZOLA, SHOULD BE SUBJECT TO MORE HARSH TREATMENT AT THE DETENTION STAGE.**

The government is correct in stating that ". . . each defendant's bond determination must be individualized. . .". *See* ECF. Doc. No. 69: Government's Opposition at p. 10. But, nonetheless, seeks its continuing effort to detain Pezzola, a respected family-oriented man, military man who served this country proudly, owned a small business that employed others, has an excellent background, and no history of violence.

To begin, the Government argues throughout its entire opposition that all the evidence available now was available to the defense on March 1, 2021, the date of the last pretrial detention hearing. *See* 3/1/2021 Minute Entry. What the government does not address is *first*, in numerous January 6 cases, its office has acknowledged on the record in those cases that discovery will not be complete until 2022; *second*, that *Munchel* was decided after Pezzola's last detention hearing, and such new interpretation was not applied in this matter. *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021); and *third*, that approximately 45 days after Pezzola's last detention hearing, a superseding indictment was filed. *See* ECF Doc. #: 34, Superseding Indictment, filed on April 16, 2021.

In addressing the robbery counts, and allegations that Pezzola "by force and violence and by intimidation, did take . . . a riot shield", the instant application does for the first time highlight that Pezzola picked the shield up from the floor. Pezzola's defense cannot speculate as to the reasons prior counsel did not fully address this during the prior hearing, but the instant application addresses this count in conjunction with others counts such as the section 1512(c) charges, as to explain to the Court that when each count is nit-picked, the overall evidence against Pezzola is not much different than co-defendant Pepe.[9] who remains on bail with specific conditions. Overall, with regard to Pezzola there are a "combination of conditions of release would reasonably assure the safety of the community" *Cf. United States v. Tanious*, No.21-3034 (D. C. Cir., Sept. Term 2020), 1:21-cr-00222 (TFH) (*citing United States v. Munchel*, 991 F.3d 1273, 1282 (D.C. Cir. 2021).

With regards to the robbery allegations, the government pasted two screen shots that do not tell the entire story. After reviewing the video the government references, a few points must also be stressed:

(1) Pezzola is pushed from behind and loses his footing around 37 seconds into the video;

(2) the video is unclear as to what Pezzola does at such time, and does not capture Pezzola taking a

---

[9] Again, in the original indictment Pezzola was charged in counts 1-11, and Pepe was charges in counts 1,2,8, and 9. In the superseding indictment, Pezzola was charged in counts 1-10, and Pepe was charges in counts 1, 2, 3, 6, 7, 8, and 9. The difference in the counts, essentially breaks down to the addition of the Robbery and property damage Pezzola is alleged to have committing and Pepe is not. So the weight of the evidence cannot be said to be that much substantially stronger against Pezzola.

shield from an officer (this is the time frame of picture 1 of 2 that the government attached);

(3)   Pezzola falls back and regains his footing without a shield in his hands;

(4)   then at 1 minute and 1 second into the video you can make out Pezzola picking the shield up off the floor.

Overall, the video is unclear and shows Pezzola being pushed and putting his hands up, then falling without a shield. At the same time officers may have fell around or on Pezzola, and its after such events that Pezzola picked up a shield off the floor as the officers turned around and went back to the line the officers set up.  Simply put, Pezzola did not obtain a shield "by force and violence and by intimidation. . .".

Furthermore, *Munchel* made it clear that a "categorical approach" that places alleged violent defendants in a group that "necessarily imposes a concrete prospective threat" is a flawed interpretation. *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021).

Here, the government continuously uses the word "violence" in explaining Pezzola's actions on January 6 as to place Pezzola into a "categorical approach" that illustrates Pezzola as "violent" individual who was nothing but "violent" on January 6. In only one sentence does the government state that that the violence was committed in front of Pezzola and not by Pezzola. *See* ECF. Doc. No. 69: Government's Opposition at p. 13 (stating officers were "toppled by violence against police *committed before [Pezzola's] eyes*. . .").

The government's picture has been painted crystal clear: Pezzola used "violence" and was "violent" and, therefore is "presumed to pose a concrete and prospective threat" to the community.

The problem is that Pezzola was *not violent* in the true sense of the word and is rather really alleged to have caused property damage.

The public already heard the name "Dominic Pezzola" during the Trial of Donald J. Trump more than ten times, where Pezzola was incorrectly portrayed as "a leader of the Proud Boys" and a "insurrectionist".[10]

Now we find ourselves in a time where since Pezzola's last detention hearing, the *Munchel* decision has provided guidance, and the J6 Defendant, Douglas Jensen, who led the "mob chase" against "Capitol Police Officer Eugene Goodman" has been released on bond. *See United States v. Douglas Jensen*, 1:21:cr-00006 (TJK); *see also United States v. Douglas Jensen*, 1:21:cr-00006 (TJK) at ECF Doc. 31 (ordering "Douglas Jensen shall be released to the custody of his wife, April Jensen, on July 14, 2021.").

---

[10]     *See* https://www.congress.gov/congressional-record/2021/02/11/senate-section/article/S645-2 (last visited on 08/20/2021); *See also* JANE FLASH, TYLER BROWN & WHAM STAFF, *Rochester Proud Boy Charged in Capitol Takes Center Stage in Impeachment Trial* (available at https://13wham.com/news/local/attorney-proud-boy-duped-by-trump-into-thinking-he-was-patriot-protecting-country (last visited on 08/20/2021) (explaining "At the same time as the detention hearing, Pezzola, 43, was a key name during day two of former President Donald Trump's impeachment trial. New video shown on the U.S. Senate floor Wednesday shows the moments after Pezzola used a shield to break through a Capitol window. Prosecutors claim Pezzola was among the first rioters to breach the Capitol. . . "He commandeered a Capitol police shield, used it to smash a glass window, entered the Capitol and paved the way for dozens of insurrectionists," said Delegate Stacey Plaskett, impeachment manager. "On the right, you can see Pezzola in the mob chasing Capitol Police Officer Eugene Goodman through the building.").

Any legal mind must ask the question "how is Pezzola ever going to receive a fair trial in Washington DC" after his name was put on blast during Trump's impeachment trial, and with the statements made at the recent congressional hearings. One article actually stated:

> That's why it's impressive that Stacey Plaskett, the House of Representatives delegate from the Virgin Islands, managed to dramatize the machinations of online political life so vividly in the impeachment trial of Donald Trump. In fact, Plaskett, a House impeachment manager, emerged at Wednesday's hearing as the Homer of the proceedings — a masterful storyteller equal to the complex task of connecting virtual signals to real-world violence.

> To prove to the Senate that Trump incited violence at the U.S. Capitol on Jan. 6, as the House's single article of impeachment alleges, Plaskett brought more discipline than operatics to her presentation. Fact by fact, she took her audience through the tragedy of the Capitol attack, linking Trump's tweets and the responses in online forums to the insurgency. Her goal was to show that "the violence was foreseeable," in her words, if you just knew where to look.

*See* VIRGINIA HEFFERNAN, *Column: Stacey Plaskett's facts will convict Trump for history, if not for the GOP* (available at https://www.latimes.com/opinion/story/2021-02-12/stacey-plaskett-impeachment-donald-trump-insurrection-january-6) (last visited 08/20/2021).

The "violence" being foreseeable and being attributed to Pezzola shortly after January 6 is part of the problem. Placing Pezzola into a "categorical approach" that places alleged violent defendants in a group that "necessarily imposes a concrete prospective threat" in the future is the other part of the problem. *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021).

Recently, the *Hale-Cusanelli* Court rejected any sort of "categorical approach" after the *Munchel* decision, in holding:

> The point of *Munchel* was that everyone who entered the Capitol on January 6 did not necessarily pose the same risk of danger and the preventive detention statue should apply to the January 6 defendants the same as it applies to everyone else, not that the January 6 defendants should get the special treatment of an automatic exemption from detention if they did not commit violence that particular day.

United States v. Hale-Cusanelli, 3 F.4th 449, 456 (D.C. Cir. 2021)

Accordingly, we know *Munchel* neither created a "categorical approach" nor did such decision authorize the District Court to place Pezzola into a specified "bucket" for special treatment. Further, *Munchel* did not create a presumption of any kind that should blanketly apply to Pezzola, or a "guideline".

With regards to Pezzola, we have been, unquestionably, placed at a highly disadvantaged starting point. With *Munchel* as guidance, we can now correctly apply the Bail Reform Act to Pezzola.

We already cannot reasonably receive a fair trial, so why must Pezzola be punished with pre-trial detention.

## POINT FIVE:
### THE GOVERNMENT CANNOT ESTABLISH AN ARTICULABLE FUTURE THREAT TO AN INDIVIDUAL OR THE COMMUNITY IN LIGHT OF MR. PEZZOLA'S CONDUCT ON JANUARY 6.

Respectfully, the Government's prior assessment of Pezzola's dangerousness was in error. First, while this Court has ruled on specific facts of this case to determine

dangerousness, it relied upon facts not in the record, misleading interpretations of facts, and certain facts which are not true or in its full context as explained above in Point Four.

Our instant application explains how this Court on March 16, 2021, already ruled that Pezzola "presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III." (*See* ECF Doc. 26); *see also* ECF Doc. 25 at p. 12, FN 2 (highlighting "The government does not press the argument that Pezzola is a flight risk very far, and like Judge Meriweather, this Court does not find it persuasive. The Court does not order that Pezzolabe detained for this reason.").

So the presumption has already been ruled to have been rebutted, and the government did not argue Pezzola was a flight risk, but Part III of this Court's analysis found, in prudent part, that: "the Government has proven: By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. . . [and that the] [w]eight of

evidence against the defendant is strong Subject to lengthy period of incarceration if convicted." (*See* ECF Doc. 26 at p. 2).[11]

As such, and evidence to diminish the Robbery and 1512 (c) charges becomes material and relevant to the instant application. *See* ECF Doc. 25 at p. 15 (denying bail because Pezzola's actions were explained to have been one of "robbing a police officer of his or her riot shield").

Essentially, this Court is left with considering whether Pezzola presents an identifiable or articulable future threat to the community, or any other person as required under *Munchel. United States v. Munchel*, 991 F.3d at 1282-1283.

In doing so, there cannot be an overwhelming emphasis upon the alleged offense conduct, and it should not be presumed because Pezzola is alleged to have damaged property that he will do something similar again. *Id.* There are various conditions or a "combination of conditions of release would reasonably assure the safety of the community" if Pezzola is placed on home incarceration with electronic monitoring. *Cf. United States v. Tanious*, No.21-3034 (D. C. Cir., Sept. Term 2020), 1:21-cr-00222 (TFH) (*citing United States v. Munchel*, 991 F.3d 1273, 1282 (D.C. Cir. 2021).

---

[11] *See also* ECF Doc. 25 at p. 15 (highlighting that "In sum, the proffered evidence shows that Pezzola came to Washington, D.C. as a key member of a broader conspiracy to effectively steal one of our Nation's crown jewels: the peaceful transfer of power."); *compare to* MARK HOSENBALL AND SARAH N. LYNCH, *Exclusive: FBI finds scant evidence U.S. Capitol attack was coordinated – sources*, available at https://www.reuters.com/world/us/exclusive-fbi-finds-scant-evidence-us-capitol-attack-was-coordinated-sources-2021-08-20/(last visited at 08/20/2021)(highlighting that just today "The FBI has found scant evidence that the Jan. 6 attack on the U.S. Capitol was the result of an organized plot to overturn the presidential election result, according to four current and former law enforcement officials.").

Simply put, Pezzola needs to care for his family, and adequaltey prepare for his defense as this matter will most likely go to trial. Pezzola can do that from the inside of his house, without posing a single threat to the community or any individual.

Therefore, the government's proofs regarding dangerousness lacks sufficient explanation.

## CONCLUSION

The government's argument in favor of pretrial detention is unsupported by facts demonstrative of risk of flight or danger to the community. The government has also utterly failed in demonstrating a specific articulated future threat of dangerousness but has instead advanced speculation and conjecture in its absence.  Dom's personal history, community ties, and lack of criminal history are more than sufficient proof to rebut any presumption of detention.   Because of this, Dom should be released from the dangerous conditions of punishment in the DC Central Detention Facility.

**WHEREFORE**, for the foregoing reasons, and any others which may appear at a full hearing on this matter, and any others this Court deems just and proper, defendant, Dom, through counsel, respectfully requests that he be released on personal recognizance. If that request is denied, defendant requests as an alternative, that he be released on Third Party Custody and placed under the Supervision Pretrial Services under the reasonable conditions of electronic monitoring, work release, out of state travel restrictions and curfew.

Dated:  August 20, 2021

Respectfully Submitted,

*Martin Tankleff*

MARTIN H. TANKLEFF, ESQ.
**Metcalf & Metcalf, P.C.**
*Attorneys for Pezzola*
99 Park Avenue, 25th Floor
New York, NY 10016
*Phone* 646.253.0514
*Fax* 646.219.2012

/s/ **Steven A. Metcalf II, Esq.**

STEVEN A. METCALF II, ESQ.
**Metcalf & Metcalf, P.C.**
*Attorneys for the Defendant*
99 Park Avenue, 25th Floor
New York, NY 10016
*Phone* 646.253.0514
*Fax* 646.219.2012
metcalflawnyc@gmail.com