## DECLARATION OF THOMAS A. DIBIASE

I, Thomas A. DiBiase, have personal knowledge of the following facts and will testify to them, if called to do so:

1. I have been the General Counsel for the United States Capitol Police ("USCP" or "Department") since August of 2020. From October 2019 to August of 2020, I served as the Acting General Counsel, and from April of 2010 to October of 2019, I served as the Deputy General Counsel. Between 1991 and 2010, I worked as a litigator at two District of Columbia law firms and served for 12 years as an Assistant United States Attorney at the United States Attorney's Office for the District of Columbia.

2. As part of my duties at the USCP, I have authorized the release of camera footage from the Department's extensive system of cameras on U.S. Capitol Grounds ("Grounds"). These cameras, part of a sophisticated closed circuit video (CCV) system, are resident both inside and outside the buildings including the U.S. Capitol itself and the other Congressional office buildings on the Grounds. This CCV system provides the backbone of the security for the U.S. Capitol Grounds. The CCV system is monitored by sworn police officers 24-7 in our Command Center and is relied upon to provide real time information regarding any incident occurring on the Grounds. The first step whenever an incident occurs is for the Command Center to pull up the CCV cameras closest to the incident. This enables the Department to have a real-time view of the incident and provides an additional layer of safety for our officers when responding to any incident.

3. Access to this CCV system is strictly limited. Because the system is a closed circuit, access to the cameras only occurs from dedicated workstations and monitors located in a handful of locations on the Grounds. Our system is not "in the cloud" and may not be monitored or

hacked by anyone not connected via a dedicated workstation and monitor.

4. The disclosure of any footage from these cameras is strictly limited and subject to a policy that regulates the release of footage. Per Department Directive 1000.002, Retrieval of Archived Video (see Attachment 1), the release of *any* footage from the Department's CCV system must be approved by the Assistant Chief of Police for Operations, the Department's second highest sworn officer. The Directive notes that, "[t]he Capitol Police Board [which oversees the USCP] directed that cameras would only be used for matters related to national security and legitimate law enforcement purposes (e.g., serious crimes). The [Assistant Chief of Police for Operations] is the sole authority for the approval of any and all requests for archived video footage...." The Directive goes on to note that, "[v]ideo footage received through an approved request shall not be delivered, copied, or transmitted to anyone other than necessary parties (e.g., court, General Counsel) without approval from the [Assistant Chief of Police for Operations]."

5. There is a specific Department form, a CP-411 (Attachment 2), which must be completed and signed by several officials including the Assistant Chief of Police for Operations before any camera footage can be released.

6. As part of my duties as General Counsel and my prior duties as the Deputy General Counsel, I have often been consulted regarding the release of camera footage. The Office of the General Counsel has consistently taken a restrictive view of releasing camera footage in cases other than serious crimes or national security. We regularly deny footage to civil plaintiffs who may have been involved in accidents on the Grounds unless they involved serious injuries or death. (Even in those cases, I have only approved an attorney or investigator coming to the USCP and viewing the footage in our offices with a USCP

employee present.) We are also often asked for camera footage related to non-USCP administrative investigations, and we generally do not provide that footage. We will, however, allow investigators from agencies with which we regularly work, such as the Architect of the Capitol, to view such footage in the presence of a USCP employee. Even a member of Congress looking to view footage of our officers' interactions with his staff had to come to our office and view the footage with our employees present.

7. In 2014, the USCP, with the assistance of the District of Columbia's Office of the Attorney General (OAG), litigated the release of USCP camera footage in Driving under the Influence ("DUI") cases. The Department successfully argued that any footage of a DUI defendant, including arrest footage and footage of the defendant being processed in our prisoner processing area, should be subject to a protective order. Since 2015 the Department provides any relevant DUI arrest footage to the OAG who in turn provides it to the defendant subject to a protective order. (A sample protective order in a DUI case along with a sample motion is attached as Attachments 3 and 4.) As noted in this protective order, an attorney for a DUI defendant "may only show the street video to the defendant and any investigators working on this case and shall not share street video nor show it to any other person not directly affiliated with this case...." (Attachment 3 at 1.) The order further notes that the attorney for a DUI defendant may not "reproduce, share, disseminate, nor discuss with any person not named in this Order, the depictions shown in the video; and ... must return the street video to the [OAG] after the later of a plea, trial or sentencing in the above-entitled case." *Id.*

8. As noted in the motion for these protective orders, the OAG argues that:

> Here, the release of Capitol security street videos could compromise USCP's ability to protect the Capitol. The USCP's primary mission is to police the United States Capitol Buildings and Grounds, and it has the power to enforce the laws of the District of Columbia pursuant to 2 U.S.C. §1961. As part of its policing

3

responsibilities, the USCP maintains and controls a series of video surveillance cameras throughout the Capitol Grounds. The purpose of the cameras is to assist in the maintenance of national security by detecting threats to U.S. Congressmen, their staff, and constituents, deterring and preventing terrorism, and providing for the safety and security of the Capitol Buildings and Grounds. The cameras are generally not used to collect evidence in criminal matters.

(Attachment 4 at 3.)

9. It is my understanding that these protective orders are regularly signed by District of Columbia Superior Court judges, and the USCP has provided hundreds of videos pursuant to these orders since 2015.

10. I am familiar with the production of camera footage related to the attempted insurrection at the U.S. Capitol on January 6, 2021. Soon after the events of January 6, the Department knew that its footage of the riots would be essential to both the criminal prosecutions arising out of the events as well as to assist Congress and possibly other entities to understand how such a vast breach of security could occur. The Department immediately preserved all the footage from that date, starting at noon and continuing until 8:00 p.m.[1] This footage[2] was then provided to two distinct groups: Congressional entities and non-Congressional entities.

11. The two main Congressional entities that requested the eight hours of footage were the Senate Rules Committee ("Rules") and the Committee on House Administration ("CHA"). Rules and CHA are the primary oversight bodies of the USCP, and the Department provided the total footage from the eight-hour period to them.[3] In addition, in response to a request from the House of Representatives General Counsel, the Department provided numerous

---

[1] Without affirmative preservation, all Department footage is automatically purged within 30 days.

[2] The total of footage provided is over 14,000 hours.

[3] In response to later requests from both committees, the Department provided footage from the entire 24-hour period for January 6, 2021.

4

clips from our footage to the House Impeachment Managers who were prosecuting the case against former President Donald J. Trump.

12. The Department also provided the complete footage from the eight-hour period to two non-Congressional entities, the Federal Bureau of Investigation ("FBI") and the D.C. Metropolitan Police Department ("MPD"), to assist in the investigation and prosecution of the cases arising out of the events of January 6, 2021.[4] It is our understanding that it is this footage for which the United States now seeks a protective order. When the Department provided its CCV camera footage to the FBI and MPD, it did so subject to several restrictions. The footage was: (a) to remain in the legal control of the USCP; (b) not to be subject to the Freedom of Information Act; and (c) to be returned to the USCP at the conclusion of any investigation. These restrictions did not apply to any footage used as "evidence or discovery as part of any prosecution of any criminal offense." (Attachment 5 at 1, and Attachment 6 at 1.)

13. The Department has not provided this footage to any other entity other than those listed above. Any public release of this footage, to the extent there has been, is not because of any authorized release by the USCP. (Note that the use of footage by the House Impeachment managers during the trial was permitted since, as a part of the Legislative Branch, the House Impeachment managers have a right to use footage from our cameras for impeachment processes similar to what would be show in a court of law.) It is important to note the wealth of publicly available footage that comes from non-USCP sources such as social media posts, footage recovered from indicted or arrested insurrectionists and footage from body worn cameras from other police departments that responded on January 6, 2021. Notably,

---

[4] The Department has provided a very limited number of video clips to the U.S. Attorney's Office for the District of Columbia for an investigation related to potential January 5th incidents.

published footage that contains sound is not from USCP, as our CCV system does not record sound. Further, USCP officers do not wear body cameras, and thus any published body-worn camera footage is from other police departments.

14. The Department has significant concerns with the release of any of its footage to defendants in the Capitol attack cases unless there are safeguards in place to prevent its copying and dissemination. The Department is aware of efforts made before January 6, 2021, by such defendants and others, to gather information regarding the interior of the U.S. Capitol, including references to the tunnels below the Grounds and maps of the building's layout, which information is generally not publically available.[5] Our concern is that providing unfettered access to hours of extremely sensitive information to defendants who have already shown a desire to interfere with the democratic process will result in the layout, vulnerabilities and security weaknesses of the U.S. Capitol being collected, exposed and passed on to those who might wish to attack the Capitol again.

15. Pursuant to 2 U.S.C. § 1979, USCP information designated as "security information" may only be released with the approval of the Capitol Police Board. Security information is defined as information that:

   (1) is sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol buildings and grounds; and

   (2) is obtained by, on behalf of, or concerning the Capitol Police Board, the Capitol Police, or any incident command relating to emergency response.

16. At this juncture, the Department in consultation with the Capitol Police Board, has designated only a small subset, consisting of less than 17 hours of footage, as "security

---

[5] Indeed, the Architect of the Capitol treats its "blueprints" of the Capitol as "security information" under 2 U.S.C. §1979, *see below*.

information," as that footage relates to evacuation of Members from their respective chambers on January 6. In addition, the Department is concerned that defendants may be provided access to large sections of footage or even all of the footage, and would deem such information, in the aggregate, to constitute "security information" under 2 U.S.C. § 1979. The ability of the defendants to copy or disseminate such footage would provide the defendants or others to whom it is released with a clear picture of the interior of the Capitol, including entry and exit points, office locations, and the relation of the crucial chambers and offices (such as the Speaker's Office or Majority Leader's Office) to other areas of the Capitol.[6]

\*   \*   \*   \*   \*

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 17th day of March 2021.

Thomas A. DiBiase

---

[6] The aggregating of information as creating a national security risk is known as the Mosaic Theory. See, https://en.wikipedia.org/wiki/Mosaic_theory_of_intelligence_gathering, last accessed March 2, 2021.

7